UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY,<br><br>Plaintiffs,<br><br>v.<br><br>AK STEEL CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 15-cv-11804<br>)<br>)<br>)<br>)<br>) |

# COMPLAINT

Plaintiffs, the United States of America, at the request of and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the Michigan Department of Environmental Quality ("MDEQ") file this complaint and allege as follows:

NATURE OF ACTION

1. This is a civil action pursuant to Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b), and Section 5530 of Part 55 of Michigan's Natural Resources and Environmental Protection Act ("NREPA"), M.C.L. § 5530, against AK Steel Corporation ("Defendant") for civil penalties and injunctive relief as a result of violations of the following: (1) the State Implementation Plan adopted by the State of Michigan and approved by the EPA pursuant to CAA Section 110, 42 U.S.C. § 7410 ("SIP" or "Michigan SIP"); (2) the Renewable Operating Permit ("ROP") issued by MDEQ pursuant to CAA Title V, 42 U.S.C. §§ 7661-7661f; (3) provisions of the National Emission Standards for Hazardous Air Pollutants for the Integrated Iron and Steel Industry, 40 C.F.R. Part 63, Subpart FFFFF; and (4) Rule 901 of

Michigan's Air Pollution Control Rules ("Michigan Rules"), 2002 A.A.C.S., R. 336.1901, and General Condition 7 of ROP No. 199700004 (Section 1).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355; and CAA Sections 113(b) and 304(a), 42 U.S.C. §§ 7413(b) and 7604(a). In addition, the Court has supplemental jurisdiction over the state law claims of MDEQ pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1395(a) and CAA Section 113(b), 42 U.S.C. § 7413(b), because the Defendant resides and is found in this District and because the alleged violations occurred within this District.

## NOTICE

4. Pursuant to CAA Section 113(a)(1), 42 U.S.C. § 7413(a)(1), EPA notified Defendant and the State of Michigan of the violations of the Michigan SIP alleged in this Complaint more than 30 days prior to its filing. EPA issued Notices of Violation and Findings of Violation ("NOV/FOVs") to Defendant on June 15, 2012 and March 5, 2013.

5. The 30-day period established in CAA Section 113(b), 42 U.S.C. § 7413(b), between the notice provided by the United States to MDEQ and the commencement of this civil action has elapsed.

## AUTHORITY

6. The United States Department of Justice has authority to bring this action on behalf of the Administrator of the EPA under 28 U.S.C. §§ 516 and 519 and CAA Section 305(a), 42 U.S.C. § 7605(a).

7. MDEQ's authority to bring this action derives from the CAA and Section 5530 of NREPA, M.C.L. § 324.5530.

## DEFENDANT

8. Defendant AK Steel Corporation, successor-in-interest to Severstal Dearborn LLC regarding the steel plant in Dearborn, Michigan at issue in this action ("Defendant"), is a publicly-held corporation organized under the laws of the State of Delaware and has a principal place of business in West Chester, Ohio.

9. Defendant owns and operates an integrated iron and steel mill that produces flat-rolled carbon steel at 4001 Miller Road, Dearborn, Wayne County, Michigan ("Dearborn Works"). The Dearborn Works consists of a blast furnace, basic oxygen furnaces and two ladle metallurgy furnaces, along with other production and finishing equipment.

10. The Dearborn Works includes the following emission sources relevant to this Complaint: the Basic Oxygen Furnace ("BOF") shop; the BOF shop electrostatic precipitator ("ESP") stack; the BOF shop B vessel stack; the C Blast Furnace east taphole roof monitor; the C Blast Furnace stove stack; the C Blast Furnace bleeder valve stack; and the Ladle Refinery.

11. Defendant is a "person" within the meaning of CAA Sections 113(b) and 302(e), 42 U.S.C. §§ 7413(b) and 7602(e).

## STATUTORY AND REGULATORY BACKGROUND

12. One of the purposes of the CAA is to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1).

The National Ambient Air Quality Standards

13. CAA Section 109(a), 42 U.S.C. § 7409(a), requires the Administrator of the EPA to publish primary and secondary national ambient air quality standards ("NAAQS") for certain criteria air pollutants. The primary NAAQS are to be adequate to protect the public health, and the secondary NAAQS are to be adequate to protect the public welfare from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air. 42 U.S.C. § 7409(b). The NAAQS promulgated by EPA pursuant to this provision are set forth in 40 C.F.R. Part 50.

14. Particulate matter is an "air pollutant" within the meaning of CAA Sections 108 and 302, 42 U.S.C. §§ 7408 and 7602.

15. Pursuant to CAA Section 109(a) and (b), EPA promulgated regulations that established NAAQS for particulate matter, which are codified at 40 C.F.R. §§ 50.6, 50.7, 50.13 and 50.18.

16. Under CAA Section 110, 42 U.S.C. § 7410, each state is required to adopt and submit to EPA for approval a SIP that provides for the implementation, maintenance, and enforcement of NAAQS established under CAA Section 109. Upon EPA's approval, SIP provisions become part of the "applicable implementation plan" for the State within the meaning of CAA Section 302(q), 42 U.S.C. § 7602(q).

17. Pursuant to CAA Section 110, 42 U.S.C. § 7410, the State of Michigan adopted and submitted to EPA various regulations that were subsequently approved by EPA and which, taken together, constitute the SIP for the State of Michigan. *See* 40 C.F.R. Part 52, Subpart X.

The regulations EPA approved as part of the applicable implementation for the State of Michigan are hereafter referred to as the "Michigan SIP Rules."

Particulate Matter Provisions of the Michigan SIP

18.     EPA approved Michigan Rules 301 through 374(1), Mich. Admin. Code R. 336.1301-336.1374(1) (1999), as the Michigan SIP Rules for particulate matter, effective July 13, 1992.  57 Fed. Reg. 24,752 (June 11, 1992).  The Michigan SIP Rules for particulate matter limit the emission of particulate matter from various processes or process equipment based on the density of emissions as measured by the emission's opacity (the degree to which emissions reduce the transmission of light and obscure the view of an object in the background).

19.     Specifically, Michigan Rule 301(1), 2002 A.A.C.S., R. 336.1301(1), the general particulate matter emission limit in the Michigan SIP Rules, provides that:

> a person shall not cause or permit to be discharged into the outer air from a process or process equipment a visible emission of a density greater than the most stringent of the following:  (a) a 6-minute average of 20% opacity, except for one 6-minute average per hour of not more than 27% opacity; (b) a limit specified by an applicable federal new source performance standard; (c) a limit specified as a condition of a permit to install or permit to operate.

20.     The general emission limit for particulate matter set forth in Michigan Rule 301(1) does not apply to any process or process equipment for which fugitive visible emission limitations are specified elsewhere in the Michigan SIP Rules.  2002 A.A.C.S., R. 336.1301(2).

21.     The Michigan SIP Rules for particulate emissions prohibit a visible emission from a BOF shop roof monitor with a density of more than 20% opacity.  Mich. Admin. Code R. 336.1364(2) (1999).

22. The Michigan SIP Rules for particulate emissions prohibit a visible emission from a blast furnace roof monitor with a density of more than 20% opacity. Mich. Admin. Code R. 336.1358(1) (1999).

### National Emission Standards for Hazardous Air Pollutants

23. The CAA requires EPA to promulgate regulations that establish national emission standards for categories of major sources and area sources of listed hazardous air pollutants ("HAPs"). 42 U.S.C. § 7412(d). These standards are known as the National Emissions Standards for Hazardous Air Pollutants ("NESHAPs").

24. A "major source" of HAPs is any stationary source that emits or has the potential to emit any single HAP at a rate of 10 tons or more per year, or any combination of HAPs at a rate of 25 tons or more per year. 42 U.S.C. § 7412(a).

25. The Dearborn Works is a "major source" of HAPs as this term is defined at Section 112(a)(1) of the CAA, 42 U.S.C. § 7412(a)(1).

26. The Dearborn Works is a "stationary source" as this term is defined at Section 111(a) of the CAA, 42 U.S.C. § 7411(a). *See* 42 U.S.C. § 7412(a)(3).

27. Pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, EPA promulgated National Emissions Standards for Hazardous Air Pollutants for the Integrated Iron and Steel Industry, 40 C.F.R. Part 63, Subpart FFFFF ("5F NESHAP"), which applies to the owners and operators of integrated iron and steel manufacturing facilities that are a major source of HAPs.

28. The 5F NESHAP applies to each new and existing affected source within an integrated iron and steel manufacturing facility, including basic oxygen process furnace shops and ladle metallurgy processes. 40 C.F.R. § 63.7782.

29. For each existing affected source, the 5F NESHAP requires the operation and maintenance of each existing affected source, including air pollution control and monitoring equipment, to be conducted in a manner consistent with good air pollution control practices. 40 C.F.R. § 63.7800(a).

30. Under 40 C.F.R. § 63.7834, affected sources subject to the 5F NESHAP are required to conduct monthly inspections of their capture systems and perform preventative maintenance.

## Title V Operating Permit

31. CAA Sections 501 through 507 ("Title V"), 42 U.S.C. §§ 7661-7661f, establish an operating permit program for certain air pollution sources, including "major sources." The Title V permits contain all applicable emission limitations and standards to ensure that all "applicable requirements" for compliance with the CAA are collected in one place.

32. "Major source" under Title V includes, *inter alia*, any stationary source that is a "major source" as defined in Section 302(j) of the CAA, 42 U.S.C. §§ 7602(j); 7661(2). *See also* 40 C.F.R. § 70.2. Among other things, "major sources" include sources that directly emit, or have the potential to emit, greater than 100 tons per year or more of any criteria pollutant, 10 tons per year or more of any single hazardous air pollutant, or 25 tons per year or more of any combined hazardous air pollutants.

33. CAA Section 502(a), 42 U.S.C. § 7661a(a), makes it unlawful for any person to violate any requirement of a permit issued under Title V or to operate a major source except in compliance with a permit issued by a permitting authority under Title V.

34. CAA Section 504(a), 42 U.S.C. § 7661c(a), the federal implementing regulations of Title V of the CAA, 40 C.F.R. Part 70, and Michigan Rule 213 of the Michigan Title V operating permit program regulations, 2002 A.A.C.S., R. 336.1213, have at all relevant times required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the CAA, the 5F NESHAP, and the applicable SIP.

35. Pursuant to 40 C.F.R. Part 70, EPA granted final approval to Michigan's Title V operating permit program, effective November 30, 2001. 66 Fed. Reg. 62,949 (Dec. 4, 2001). The Michigan regulations governing the Title V permit program, also known as the "renewable operating permit program," are codified at Michigan Rules 210 through 219, Mich. Admin. Code R. 336.1210 through 336.1219.

36. In accordance with CAA Section 113(b), 42 U.S.C. § 7413(b), operating permits issued under an approved program are federally enforceable.

37. Pursuant to its authority under Title V of the CAA, MDEQ issued Defendant's predecessor a final Title V permit, referred to as a Renewable Operating Permit ("ROP"), on October 18, 2004 for the operation of its Dearborn Works. Defendant continues to operate its Dearborn Works under this ROP while its renewal application is pending. 40 C.F.R. § 70.7(b); Mich. Admin. Code R. 336.1210.

Enforcement of the CAA

38. CAA Section 113(a)(1) and (a)(3), 42 U.S.C. § 7413(a)(1) and (a)(3), authorizes EPA to bring a civil action if the Administrator of the EPA finds that any person is in violation of, *inter alia*, any requirement or prohibition of an applicable Michigan SIP, any regulations promulgated under CAA Section 112, 42 U.S.C. § 7412, or any permit issued under Title V of the CAA, 42 U.S.C. §§ 7661-7661f.

39. CAA Section 113(b), 42 U.S.C. § 7413(b), authorizes the Court to enjoin a violation, to require compliance, to assess a civil penalty, and to award any other appropriate relief for each violation.

40. CAA Section 113(b), 42 U.S.C. § 7413(b), authorizes civil penalties of up to $25,000 per day for each violation of the CAA. The Debt Collection Improvement Act, 31 U.S.C. §§ 3701 *et seq.*, requires EPA to periodically adjust its civil penalties for inflation. On December 11, 2008, and November 6, 2013, EPA adopted and revised regulations entitled "Adjustment of Civil Monetary Penalties for Inflation," 40 C.F.R. Part 19, to upwardly adjust the maximum civil penalty under the CAA. For each violation that occurs on or after January 13, 2009, penalties of up to $37,500 per day may be assessed. 73 Fed. Reg. 75,340 (Dec. 11, 2008); 78 Fed. Reg. 66,643 (Nov. 6, 2013).

41. Section 304(a) of the CAA, 42 U.S.C. § 7604(a), authorizes any person to commence a civil action for a violation of an emission standard or limitation. MDEQ is a "person" within the meaning of CAA Section 304. 42 U.S.C. § 7602(e).

42. Pursuant to Section 5530 of Part 55 of NREPA, M.C.L. § 324.5530, MDEQ may seek injunctive relief and a civil fine of up to $10,000 for each violation of Part 55 of NREPA, a rule promulgated under Part 55 of NRPEA, and a permit issued under Part 55 of NREPA.

### Michigan Rule 901

43. Michigan Rule 901, 2002 A.A.C.S., R. 336.1901, provides that a person shall not cause or permit the emission of an air contaminant or water vapor in quantities that cause, alone or in reaction with other air contaminants, either of the following:  (a) injurious effects to human health or safety, animal life, plant life of significant economic value, or property; or (b) unreasonable interference with the comfortable enjoyment of life and property.

### FIRST CLAIM FOR RELIEF
(BOF ESP Opacity Limit Violations)

44. Plaintiffs reallege and incorporate by reference Paragraphs 1-42 as if fully set forth herein.

45. On various dates during the past five years, including but not limited to those dates and times listed in the NOV/FOVs issued by EPA and in eleven violation notices issued by MDEQ between October 28, 2010 and March 27, 2013, Defendant caused or allowed visible emissions of particulate matter from the BOF ESP stack to exceed 20% opacity (excluding one 6-minute average per hour of not more than 27% opacity).

46. By having emissions from the BOF ESP stack at the Dearborn Works exceed 20% opacity (excluding one 6-minute average per hour of not more than 27% opacity), Defendant violated its ROP, the Michigan SIP, Michigan Rule 301(1), and the CAA.

47. Unless restrained by an order of this Court, Defendant's violations of its ROP, the Michigan SIP, Michigan Rule 301(1) and the CAA, as set forth in this Claim for Relief, are likely to continue.

48. Defendant's violations, as set forth in this Claim for Relief, make it subject to civil penalties of up to $37,500 per day for each violation.

SECOND CLAIM FOR RELIEF
(BOF Shop Roof Monitor Opacity Limit Violations)

49. Plaintiffs reallege and incorporate by reference Paragraphs 1-42 as if fully set forth herein.

50. On at least six occasions during the last five years, including but not limited to those dates and times listed in six violation notices issued by MDEQ between May 16 and November 14, 2012, Defendant caused or allowed visible emissions of particulate matter from the BOF Shop roof monitor to exceed 20% opacity.

51. By having emissions from the BOF Shop roof monitor at the Dearborn Works exceed 20% opacity, Defendant violated its ROP, the Michigan SIP, Michigan Rule 364(2), and the CAA.

52. Defendant's violations of the CAA, as set forth in this Claim for Relief, make it subject to civil penalties of up to $37,500 per day for each violation.

THIRD CLAIM FOR RELIEF
(NOF 5F NESHAP Violations)

53. Plaintiffs reallege and incorporate by reference Paragraphs 1-42 as if fully set forth herein.

54. On various occasions during the past five years, including but not limited to those dates and times listed in four violation notices issued by MDEQ between March 15, 2011 and October 27, 2014, Defendant failed to perform inspections and preventative maintenance on pollution capture and control systems related to the BOF, failed to conduct monthly inspections of pollution capture and control systems related to the BOF, and failed to maintain records of the pollution capture and control systems related to the BOF to demonstrate continuous compliance with the operation and maintenance requirements of the 5F NESHAP.

55. By failing to properly inspect, maintain and keep records regarding its BOF pollution capture and control systems at the Dearborn Works, Defendant violated its ROP, the 5F NESHAP, and the CAA.

56. Unless restrained by an order of this Court, Defendant's violations of its ROP, the 5F NESHAP, and the CAA, as set forth in this Claim for Relief, are likely to continue.

57. Defendant's violations, as set forth in this Claim for Relief, make it subject to civil penalties of up to $37,500 per day for each violation.

## FOURTH CLAIM FOR RELIEF
(C Blast Furnace Opacity Violations)

58. Plaintiffs reallege and incorporate by reference Paragraphs 1-42 as if fully set forth herein.

59. On at least two occasions, including but not limited to the dates and times listed in violation notices issued by MDEQ on January 6, 2010 and August 16, 2011, Defendant caused or allowed visible emissions of particulate matter from the C Blast Furnace bleeder stack to

exceed the 20% opacity limit (excluding one 6-minute average per hour of not more than 27% opacity) at its Dearborn Works.

60. On at least one occasion during the past five years, including but not limited to the dates and times listed in a violation notice issued by MDEQ on August 16, 2011, Defendant caused or allowed visible emissions of particulate matter from the C Blast Furnace stove stack to exceed the 20% opacity limit (excluding one 6-minute average per hour of not more than 27% opacity) at its Dearborn Works.

61. By having emissions from the C Blast Furnace at the Dearborn Works exceed 20% opacity (excluding one 6-minute average per hour of not more than 27% opacity), Defendant violated its ROP, the Michigan SIP, Michigan Rule 301(1), and the CAA.

62. Defendant's violations of the CAA, as set forth in this Claim for Relief, make it subject to civil penalties of up to $37,500 per day for each violation.

### FIFTH CLAIM FOR RELIEF
(C Blast Furnace East Taphole Roof Monitor Opacity Violations)

63. Plaintiffs reallege and incorporate by reference Paragraphs 1-42 as if fully set forth herein.

64. On at least three occasions, including but not limited to those dates and times listed in violation notices issued by MDEQ on April 23 and October 7, 2009 and February 11, 2010, Defendant caused or allowed visible emissions of particulate matter from the C Blast Furnace east taphole roof monitor to exceed 20% opacity.

65. By having emissions from the C Blast Furnace east taphole roof monitor at the Dearborn Works exceed 20% opacity, Defendant violated its ROP, the Michigan SIP, Michigan Rule 358(1), and the CAA.

66. Defendant's violations of the CAA, as set forth in this Claim for Relief, make it subject to civil penalties of up to $37,500 per day for each violation.

SIXTH CLAIM FOR RELIEF
(Ladle Refinery 5F NESHAP Violations)

67. Plaintiffs reallege and incorporate by reference Paragraphs 1-42 as if fully set forth herein.

68. On various occasions during the past five years, including but not limited to the period of time between January 1, 2011 and August 30, 2012 as identified in the violation notice issued by MDEQ on November 14, 2012, Defendant failed to conduct monthly inspections of both baghouses at its Ladle Refinery, failed to properly install, operate and maintain a bag leak detection system, failed to maintain records of corrective action taken for bag leak detection alarms and failed to report such deviations at the Ladle Refinery at its Dearborn Works.

69. By failing to inspect, install, operate, maintain and keep records concerning the baghouses at the Ladle Refinery at the Dearborn Works, Defendant violated its ROP, the 5F NESHAP.

70. Defendant's violations of the CAA, as set forth in this Claim for Relief, make it subject to civil penalties of up to $37,500 per day for each violation.

SEVENTH CLAIM FOR RELIEF
(Michigan Rule 901 Violations)

71. Plaintiff MDEQ realleges and incorporates by reference Paragraphs 1-43 as if fully set forth herein.

72. On various occasions, including but not limited to those dates and times listed in violation notices issued by MDEQ between July 17, 2009 and November 29, 2012, Defendant caused or permitted the emission of an air contaminant in quantities that caused an unreasonable interference with the comfortable enjoyment of life and property, in violation of Michigan Rule 901.

73. Unless restrained by an order of this Court, Defendant's violations of Michigan Rule 901, as set forth in this Claim for Relief, are likely to continue.

74. Pursuant to Section 5530 of NREPA, M.C.L. § 324.5530, the violations set forth above subject Defendant to civil penalties of up to $10,000 per day for each violation.

PRAYER FOR RELIEF

WHEREFORE, based upon all of the allegations set forth above, Plaintiffs respectfully request that this Court:

1. Permanently enjoin Defendant from further violations of the Clean Air Act and applicable requirements established thereunder, including its ROP, the Michigan SIP Rules described above, the 5F NESHAP, and Michigan Rule 901;

2. Require Defendant to comply with all necessary permits and to undertake and complete expeditiously all actions necessary to achieve and maintain compliance with Michigan Rule 901, the Clean Air Act and applicable requirements

established thereunder, including the Michigan SIP Rules described above and the 5F NESHAP;

3. Assess civil penalties against Defendant for violations of applicable provisions of Michigan Rule 901 and the Clean Air Act, as well as the implementing regulations and permits issued thereunder, of up to $37,500 per day for each such violation occurring on or after January 13, 2009;

4. Enter judgment in favor of Plaintiffs and against Defendant;

5. Award the Plaintiffs their costs and disbursements for this action; and

6. Grant such other relief as the Court deems just and proper.

Respectfully Submitted,

FOR THE UNITED STATES OF AMERICA

JOHN C. CRUDEN
Assistant Attorney General
Environmental and Natural Resources Division
U.S. Department of Justice


  s/Michael J. Zoeller
MICHAEL J. ZOELLER
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Ben Franklin Station, PO Box 7611
Washington, DC  20044
Tel: (202) 305-1478
Fax: (202) 616-6584
Email:  michael.zoeller@usdoj.gov

                                      BARBARA L. McQUADE
                                      United States Attorney

                                      s/with consent of Peter Caplan
                                      PETER CAPLAN

| | |
|---|---|
| OF COUNSEL: | Assistant United States Attorney |
| KASEY BARTON | 211 West Fort Street, Suite 2001 |
| Associate Regional Counsel | Detroit, MI   48226 |
| U.S. Environmental Protection | Tel: (313) 226-9784 |
| Agency-Region 5 | Fax: (313) 226-3800 |
| 77 West Jackson Blvd. | P30643 |
| Chicago, IL 60604-3507 | Email:  peter.caplan@usdoj.gov |

17

FOR THE MICHIGAN DEPARTMENT
OF ENVIRONMENTAL QUALITY

BILL SCHUETTE
Attorney General
State of Michigan


 s/with consent of Neil D. Gordon
NEIL D. GORDON
Michigan Department of Attorney General
Environment, Natural Resources
 and Agriculture Division
P.O. Box 30755
Lansing, MI  48909
(517) 373-7540
P56374
Email:  gordonn1@michigan.gov